UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHERIE R. DILLON,<br><br>  Movant,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>  Respondent. | Civil Case No.  1:19-cv-00320-BLW<br>Crim. Case No. 1:16-cr-00037-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Movant Cherie R. Dillon's Motion Under 28 U.S.C.

§ 2255 to Vacate, Set Aside, or Correct Sentence (Dkt. 1). For the reasons

explained below, the Court will deny the motion.

## BACKGROUND

Cherie Dillon was charged with 24 counts of heath care fraud and

aggravated identity theft. On fourth day of trial, after the government had put on

some 40 witnesses and rested, Ms. Dillon pleaded guilty to all counts. She signed a

plea agreement containing this provision:

> If the defendant pleads guilty to all counts in the superseding
> indictment, including forfeiture, the United States Attorneys' Office
> for the District of Idaho agrees not to file any additional criminal
> charges against her for the conduct described in the superseding
> indictment and at trial. Additionally, she will waive her appeal rights
> as described in the earlier offered, but not accepted, plea agreement.

This is the extent of the agreement. Both parties are free to present any arguments or evidence at sentencing. If she elects not to plead guilty, we will proceed with trial.

*Plea Agmt.*, Dkt. 50, at 2.

Given the plea agreement, the Court stopped the trial and conducted a change-of-plea hearing. During that hearing, Ms. Dillon was given the following warnings regarding forfeiture:

> THE COURT:    And you understand that, in addition, there are forfeiture allegations in the superseding indictment such that, based upon your guilty plea and the court's finding you guilty, you will be required to forfeit property to the government as set forth in the indictment?
>
> MS. DILLON    Yes, Your Honor.
>
> THE COURT:    Mr. Maloney, do you feel there is any need to be more detailed than that at this time?
>
> MR. MALONEY: Your Honor, forfeiture is generally a sentencing matter. I believe the court would find beyond a preponderance at sentencing the forfeiture amount.
>
> THE COURT:    But a predicate for the forfeiture is the defendant's pleading guilty or having been found guilty.
>
> MR. MALONEY: Oh, absolutely, yes.
>
> THE COURT:    That's why I'm just trying to establish that she understands that there will be a forfeiture of her assets and that the general terms of what the government seeks is set forth in the superseding indictment. Is that correct?

MR. MALONEY: Yes, Your Honor. The defendant should be put on notice that the government seeks a money judgment and that if the – it says, essentially, that if the assets cannot be located, substitute assets may be pursued.

THE COURT:         Do you understand that?

MS. DILLON:         Yes, Your Honor.

*Transcript*, Dkt. 53, at 19:15 to 20:13.

Later in the hearing, the Court again advised Ms. Dillon regarding forfeiture:

THE COURT:         Ms. Dillon, you acknowledge that there is a forfeiture provision in the superseding indictment which has now become effective following your guilty plea and that you will be subject to forfeiture proceedings, the government's claims for which are set forth in the superseding indictment? Do you understand that?

DEFENDANT:         Yes, Your Honor.

THE COURT:         And you understand that your guilty plea to these 48 counts does, indeed, trigger the government's right to pursue those forfeiture matters? What will actually be forfeited may be contested, I suppose, but the allegations are there. Actually, I don't know what the indictment says specifically. I could go back and look at it.

MR. MALONEY: Your Honor, the indictment -- if I may flip to it.

THE COURT:         Well, I want to stand corrected, because I suggested the forfeiture itself could be contested. But it seems to me now, with the

defendant's guilty plea, that the right of forfeiture has been triggered. And the question of what is subject to forfeiture, that may still be contested, Mr. Maloney, or not? I have not had this come up, so that's why I'm asking.

MR. MALONEY: Your Honor, the superseding indictment says a money judgment of at least $143,000 and change or potential substitute assets. And the plea agreement says "plead guilty to all the counts in the superseding indictment, including forfeiture." So it would be the government's position that she is admitting that. That number was from -- that number has been amended, if you will, throughout the course of the trial. Our summary exhibit presented a total of $126,571.62. So if it would make sense to use that number instead, I'm fine with that. But I think there can be –

THE COURT: Well, what I'm concerned with – I mean, are you saying the government will not pursue anything more than that by way of forfeiture?

MR. MALONEY: I was just about to say, Your Honor, I think there can be argument at sentencing about the forfeiture amount, but that's the amount on which she is on notice.

THE COURT: Okay. That's all I'm trying to establish, is what the parameters are of what the defendant's guilty plea will trigger. And she is now on notice that, by having pled guilty, she is subject to forfeiture proceedings and that the government is going to pursue the amount that you have just recited in forfeiture proceedings and perhaps more, but she is on notice of at least that amount being claimed by the government. There may be supplemental proceedings as to the precise amount and whether any other – I suppose other

> third parties may have claim to those funds.

MR. MALONEY: That's an accurate description, Your Honor. Thank you.

THE COURT: Mr. Roark, you're content with that?

MR. ROARK: I am, Your Honor. There was a deviance between what is alleged in the indictment and what was actually shown in that summary exhibit yesterday, which was the $126,000 figure, but we are acknowledging that in entering the pleas of guilty, the forfeiture language has been activated, and Ms. Dillon is, indeed, subject to a forfeiture order from this court.

*Id.* at 43:16 to 46:7.

Also, at another point during the change-of-plea hearing, the Court generally advised Ms. Dillon that "the loss amount may not be limited just to the 24 counts" and that the Court would also take into account "matters not charged by the government." *Id.* at 9. The Court also informed Ms. Dillon that restitution would be "in addition to forfeiture." *Id.* at 19.

A few months after the plea hearing, the probation officer prepared and distributed the initial Pre-Sentence Investigation Report (PSR). That report conservatively calculated the loss amount from the scheme alleged in the indictment at $596,551.39. *See Initial PSR,* Cr. Dkt. 55. The government then requested forfeiture in the amount of $847,016.00. Ms. Dillon objected to the request, arguing that the forfeiture order should be $126,571.62. After multiple

rounds of briefing, the Court set the forfeiture amount at $847,016, as requested by the Government. *See Oct. 27, 2017 Order,* Cr. Dkt. 102.

Ms. Dillon now says that, based on statements made during the plea hearing, her attorney believed the forfeiture amount could not exceed $126,671.62 (the amount referenced during the plea hearing), or, at the very most, $143,069.27 (the amount stated in the superseding indictment). She also says that, because this is how counsel viewed the case, he never advised her that the forfeiture amount could exceed either of those numbers – and certainly not by over $700,000. She says her attorney thus "grossly mischaracterized" the likely outcome of the forfeiture. *Motion Mem.,* Civ. Dkt. 15-1, at 14.

Ms. Dillon appealed, but her appeal was dismissed. The Ninth Circuit found that Ms. Dillon's plea was knowing and voluntary and that she had validly waived her right to appeal. *See Dec. 14, 2018 Mem. Disp.*, Cr. Dkt. 153, at 3.

## LEGAL STANDARD

### 1. 28 U.S.C. § 2255

Title 28 U.S.C. § 2255 provides four grounds on which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by

law;" and (4) that the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing § 2255 Proceedings provides that a court must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." "Under this standard, a district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *United States v. Withers*, 638 F.3d 1055, 1062-63 (9th Cir. 2011) (citation omitted).

The Court may dismiss a § 2255 motion at various stages, including pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.*

If the Court does not dismiss the proceeding, the Court then determines under Rule 8 whether an evidentiary hearing is required. The Court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record. *See Frazier v. United States*, 18 F.3d 778, 781 (9th Cir.

1994). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *Withers*, 638 F.3d at 1062.

## 2. Ineffective Assistance

A defendant is entitled to effective assistance of counsel at all "critical stages" of the criminal process, including trial, sentencing, and direct appeal. *United States v. Leonti*, 326 F.3d 1111, 1116–17 (9th Cir. 2003). To establish a claim for ineffective assistance of counsel, Petitioner must prove (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to establish that counsel's performance was deficient, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. There is a strong presumption that counsel was within the range of reasonable assistance. *Id*. at 689. In order to establish that counsel's performance prejudiced the defense, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

In evaluating an ineffective assistance of counsel claim, the Court may consider the performance and prejudice components of the Strickland test in either order. *See Strickland*, 466 U.S. at 697. The Court need not consider one component if there is an insufficient showing of the other. *Id.*

## ANALYSIS

Ms. Dillon says her counsel was ineffective in two primary ways. First, she says he "grossly mischaracterized" the likely forfeiture amount. Second, she says that when the initial PSR was distributed – calculating a loss of around $570,000, rather than the anticipated $126,571.62  –  her attorney performed deficiently by not advising her to file a motion to withdraw her plea. She says she would have wanted to withdraw her plea and proceed to trial a second time and, further, that the Court likely would have allowed her to withdraw her plea.

### 1.  Failure to Advise Dillon Regarding the Forfeiture Amount

Defendants cannot challenge forfeiture orders in § 2255 proceedings. *See United States v. Sperow*, No. 1:06-cr-00126-BLW, 2015 WL 1467198, at *27 (D. Idaho Mar. 30, 2015) (citing cases). Dillon, however, is not directly attacking the forfeiture order. Rather, she says her lawyer erroneously advised her that the maximum amount of forfeiture would be around $143,000 and then compounded his error by failing to advise her to seek to withdraw her plea once the government sought a forfeiture order of nearly $850,000. She says she wouldn't have pleaded guilty if she had known she could have faced such a large forfeiture order.

Dillon has not cited a single factually similar decision that granted § 2255 relief on this theory. She analogizes to cases where attorneys provided "grossly inaccurate" sentencing information at the plea stage. In other words, she says that

if she had the correct information regarding the comparative risks of pleading guilty versus the risk of going on with her trial, she would have proceeded to trial – again.

Dillon is correct that defendants logically conduct a risk analysis when deciding whether to accept a plea. *See generally Lee v. United States*, 137 S. Ct. 1958, 1964 (2017). As one court observed, "When a plea offer is made, 'knowledge of the comparative sentence exposure between standing trial and accepting a plea will often be crucial to the decision whether to plead guilty.' Accordingly, the lawyer 'should usually inform the defendant of the strengths and weaknesses of the case against him, as well as to the alternative sentences to which he will most likely be exposed.'" *Carrion v. Smith*, 644 F. Supp. 2d 452 (S.D.N.Y. 2009) (*citing Purdy v. United States*, 208 F.3d 41, 42 (2d Cir. 2000)). Here, under Ms. Dillon's theory, her attorney provided grossly inaccurate information regarding the risks of pursuing a plea by telling her she would only be subject to, at most, $143,000 in forfeiture, when, in fact, she was ultimately subjected to an $850,000 forfeiture order.[1] The problem with this theory is that the Court plainly

---

[1] *See generally* Lee, 137 S. Ct. at 1961 (explaining, as a hypothetical example, that "a defendant with no realistic defense to a charge carrying a 20-year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years"); *United States v. Bui*, 795 F.3d 363 (3d Cir. 2015) (counsel's erroneous advice that defendant was eligible for safety valve relief was (Continued)

informed Ms. Dillon during the change-of-plea hearing that the *minimum* amount

of the forfeiture would be $126,571.62. She was expressly informed that that

number could be higher and that the government could present argument and

evidence on this point at sentencing. On appeal, the Ninth Circuit characterized the

plea colloquy as follows:

> The district court's plea colloquy was extensive: it warned Dillon
> that the PSR might include losses related to conduct for which she
> had not pleaded guilty; that the loss amount would be the primary
> driver of her guideline range; that forfeiture was implicated; and
> that the government could pursue a loss theory for more than the
> amount alleged in the indictment. Dillon verbally acknowledged
> each of these warnings.

*Dec. 14, 2018 Mem. Disp.*, Cr. Dkt. 153, at 3.

Given this plea colloquy – with its express warnings regarding forfeiture –

Ms. Dillon cannot now claim – let alone establish – that she relied on "grossly

inaccurate" information in deciding to plead guilty.

The Ninth Circuit has repeatedly rejected for lack of prejudice defendants'

---

deficient performance); *United States v. Marcos-Quiroga*, 478 F. Supp. 2d 1114 (N.D. Iowa
2007) (defendant satisfied the deficient-performance prong where counsel failed to advise him
that he would be sentenced as a career offender); *United States v. Gaviria*, 116 F.3d 1498 (D.C.
Cir. 1997) (counsel performed deficiently by wrongly telling defendant he would be sentenced as
a career offender); *United States v. Day*, 969 F.2d 39, 43 (3d Cir.1992) ("familiarity with the
structure and basic content of the Guidelines (including the definition and implications of career
offender status) has become a necessity for counsel who seek to give effective representation.");
*United States v. Manzo*, 675 F.3d 1204, 1210 (9th Cir. 2012) (finding deficient performance
where counsel incorrectly anticipated that defendant's offenses would be grouped for sentencing;
because they were not grouped, defendant faced a sentencing range of 292 to 365 months, rather
than the expected range of 135 to 168 months).

MEMORANDUM DECISION AND ORDER - 11

claims of ineffective assistance of counsel where a district court advises the defendants of the maximum possible penalty and the defendants expressed satisfaction with their attorney before entering a guilty plea." *Corrales v. United States*, 14-CR-00099-BLW, 2018 WL 4189624 at *3 (D. Idaho Aug. 31, 2018) (citing Ninth Circuit cases). Here, by analogy, this Court advised Ms. Dillon that the government would seek a forfeiture order and that it could be more than the amount stated in the indictment. The indictment and the plea agreement track that advice: The forfeiture allegation states that the property to be forfeited "includes but is not limited to" a "money judgment" of "*at least* § 143,069.27" *Superseding Indictment,* Cr. Dkt. 16, at 13 (emphasis added). And the plea agreement clarifies that Ms. Dillon agreed to plead guilty "to all counts in the superseding indictment, *including the forfeiture*" and that the United States "was free to present any arguments or evidence at sentencing." *Plea Agmt.*, Cr. Dkt. 50, at 2 (emphasis added). Further, given the nature of forfeiture, it's often not possible to determine the maximum amount of forfeiture until later, at sentencing. *Cf. United States v. Cueller*, 646 Fed. App'x 574, 577 (9th Cir. 2016) (unpublished disposition) (counsel not required to inform defendant of exact amount of restitution as that amount would be determined later, during the sentencing process) (citing Fed. R. Crim. P. 11(c), advisory committee's note to 1985 amendment).

Given these authorities, Ms. Dillon's motion under 28 U.S.C. § 2255 will be

denied. In a nutshell, Dillon is arguing that she was blindsided by the government's decision to pursue a forfeiture order so much larger than the minimum amount stated in the indictment and during trial proceedings. The Ninth Circuit has already determined that she received adequate warnings on this topic. As such, even assuming the attorney performed deficiently, there was no prejudice because the Court correctly informed her that the forfeiture amount could be greater than those amounts.

**2.  Failure to Advise Dillon to Withdraw her Plea**

Dillon next says that that when the government sought a forfeiture order of nearly $850,000, her attorney should have advised her to move to withdraw her plea. The Court cannot find deficient performance in counsel's failure to so advise his client for two reasons.

First, as already noted, Ms. Dillon had been warned that the forfeiture amount could be greater than $143,000 and proceeded to enter a knowing and voluntary plea. As such, it was not incumbent upon counsel to advise her to withdraw her plea when the government later sought a larger forfeiture order.

Second, even assuming that Ms. Dillon indeed would have wished to withdraw her plea, she cannot show that a motion to withdraw her plea was reasonably likely to succeed. To the contrary, this Court almost certainly would have denied the motion.

A guilty plea may be withdrawn before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004). However, the inquiry is fact-specific, and each case must be considered in context. *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008). Further, "[o]nce the plea is accepted, permitting withdrawal is, as it ought to be, the exception, not an automatic right." *United States v. Ensminger*, 567 F.3d 587, 593 (9th Cir. 2009).

Here, these factors do not weigh in favor of withdrawal. Most significantly, the plea colloquy was adequate and Ms. Dillon was advised that the forfeiture amount could be more than the $126,571.62 discussed during the plea hearing and more than the $143,000 mentioned in the indictment. Otherwise, there was no newly discovered evidence or other intervening circumstances that would have convinced the Court to allow Ms. Dillon to withdraw her plea.

Ms. Dillon relies on *United States v. Alvarez-Tautimez*, 160 F.3d 573 (9th Cir. 1998) to demonstrate that counsel should have advised her to withdraw her plea. That case, however, is distinguishable.

In *Alvarez-Tautimez*, the defendant filed a motion to suppress evidence, and

then, before the court ruled on his motion, he pleaded guilty before a magistrate judge. After he pleaded guilty – but before the district court accepted the plea – the district court granted a co-defendant's substantially identical motion to suppress. Once that motion was granted, the entire factual basis for the defendant's guilt disappeared, so the obvious next move for Alvarez-Tautimez was to immediately file a motion to withdraw his guilty plea. Because his guilty plea had not yet been accepted by the district court, the motion to withdraw the plea unquestionably would have been granted. Yet Alvarez-Tautimez's attorney did not advise his attorney to seek to withdraw the plea. On those facts, the Ninth Circuit held that the defendant's failure to file a motion to withdraw the plea was deficient and that the defendant was manifestly prejudiced.

Unlike the defendant in *Alvarez-Tautimez*, Ms. Dillon cannot demonstrate that her attorney performed deficiently by failing to advise her to seek to withdraw her plea agreement. First, as already discussed, it is unlikely that the Court would have exercised its discretion to allow withdrawal of the plea. Additionally, unlike Alvarez-Tautimez, Dillon cannot argue that the calculus had changed such that she now had a shot at succeeding at trial. Granted, she does not need to prove that she would succeed at trial to demonstrate prejudice; the question is whether, if given the chance, she would have sought to withdraw her plea. That question, in turn, necessarily involves examining the strength of the government's case.

MEMORANDUM DECISION AND ORDER - 15

And on that point, Ms. Dillon has not adequately explained why she would have wanted to withdraw her plea, other than by pointing out that she had no idea that the forfeiture amount would be so much larger than she had anticipated.

Also, Dillon's newly proffered risk analysis disregards the benefit of the plea. She now argues that "pleading guilty when she did proved to be the worst of all worlds for Cherie and thus, there was simply no reason for Cherie not to withdraw her guilty plea once she was on notice of the likely outcome of the case." *Mtn. Mem.,* Civ. Dkt. 1-5, at 10. But this argument overlooks the fact that the government agreed not to prosecute uncharged conduct, which, according to the government, supported charges for tax fraud and distribution of controlled substances.

Under these circumstances, the Court cannot conclude that counsel performed deficiently by failing to advise Dillon she should file a motion to withdraw her plea. Nor can the Court conclude that any such failure would have been prejudicial. Accordingly, the Court will deny the motion.

## 3. Certificate of Appealability

The Court will also deny a certificate of appealability. The standard to obtain review is lower than that required for a petitioner to succeed on the merits of his petition. *Lambright v. Stewart*, 220 F.3d 1022, 1024-25 (9th Cir. 2000). To satisfy this lower standard when the court has denied a § 2255 motion, a petitioner must

show reasonable minds could debate over the resolution of the issues or that questions raised in the petition deserve further review. *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006). Having reviewed the record in this case, the Court finds that reasonable jurists would not find its determinations regarding Dillon's claims to be debatable or deserving of further review. Accordingly, the Court will not issue a certificate of appealability as to any issue raised in the § 2255 motion.

If Dillon wishes to proceed to the United States Court of Appeals for the Ninth Circuit, she must file a notice of appeal in this Court within thirty days after entry of this Order, and he must seek a Certificate of Appealability from the United States Court of Appeals for the Ninth Circuit in accordance with Federal Rule of Appellate Procedure 22(b)(2).

## ORDER

### IT IS ORDERED that:

1. Defendant's Motion to Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civ. Dkt. 1; Cr. Dkt. 171) is DENIED.

2. No Certificate of Appealability shall issue.

3. The Court will issue a separate judgment as required by Rule 58(a).

DATED: March 18, 2021

B. Lynn Winmill
U.S. District Court Judge